PER CURIAM.
Kurt Klinker (“Klinker”) seeks a writ of certiorari from this Court quashing a circuit court opinion which affirmed a hearing officer’s determination that Klinker’s driver’s license suspension should be sustained. We deny, as meritless, Klinker’s petition to the extent that it challenges whether there was probable cause for Trooper Ramirez’ traffic stop. Likewise, we deny Klinker’s remaining claims challenging the hearing officer’s refusal to issue subpoenas to FDLE employees Roger Skipper, Jennifer Keegan, and Laura Bar-field; the hearing officer’s refusal to set aside Klinker’s suspension based on his claim that the Intoxilyzer 8000 breath test machine has never been properly approved for evidentiary use in Florida; and his claim that the record before the hearing officer failed to include a copy of the most recent Florida Department of Law Enforcement Department (“FDLE”) Inspection Report (FDLE/ATP Form 41) for the Intoxilyzer 8000 machine used to test him.
We conclude, however, that because these latter claims have resulted in conflicting decisions in the circuit courts below, it is incumbent upon us to address the issues presented in order to resolve the confusion that currently exists. Cf. Department of H’wy Safety & Motor Vehicles v. Alliston, 813 So.2d 141, 145 (Fla. 2d DCA 2002) (“[W]e conclude that the circuit court’s error results in a miscarriage of justice requiring certiorari relief because it has precedential value and the circuit court is applying the same error to numerous other administrative proceedings involving the suspension of driver’s licenses.”).
On June 18, 2010, Klinker was lawfully stopped in his vehicle by Trooper Ramirez after having been observed by the officer to be travelling over the posted speed limit. Trooper Ramirez approached Klinker’s vehicle and observed Klinker to have glassy, blood-shot eyes, a flushed face, slurred speech, and an odor of alcohol. After Klinker performed poorly on field sobriety exercises, Trooper Ramirez arrested Klinker for DUI and transported him to the Orange County Breath Test Center where Klinker would later submit to a breath test utilizing an Intoxilyzer 8000 breath test machine (using software version 8100.27). The results of Klinker’s two breath tests were readouts of 0.196 and 0.200, considerably above the statutory maximum of .08. Based upon this information, Trooper Ramirez suspended *837 Klinker’s license for driving under the influence of alcohol.
Klinker would subsequently request that a formal administrative review of his license suspension be conducted by the Florida Department of Highway Safety and Motor Vehicles (“DHSMV”). See Fla. Admin. Code R. 15A-6.006. The hearing was scheduled to be held in Orlando, Florida, where the notice of suspension was issued. See Fla. Admin. Code R. 15A-6.009.
In preparation for his hearing, Klinker listed 20 separate issues to be resolved and requested that the hearing officer issue subpoenas and/or subpoenas duces tecum for three FDLE employees: Roger Skipper, Laura Barfield, and Jennifer Keegan. According to the subpoena requests, both Barfield and Keegan worked at an FDLE office in Tallahassee, and Skipper worked at an FDLE office in Orlando. According to Klinker’s prehearing statement, these three FDLE employees would be needed to testify on all the following matters at the formal administrative review hearing:
Roger Skipper: Testify as to breath test results and improper approval and registration of breath test machines, simulator solutions, including but not limited to Guth Alcohol Countermeasures and other dry gas standards are not properly approved, modification to breath test device. Non-compliance with F.D.L.E. Rules 11D-8.003, 11D-8.0035, 11D-8.004, 11D-8.006 and 11D-8.007.
Laura Barfield: Testify as to simulator solutions including but not limited to Guth Alcohol Countermeasure solutions and other dry gas standards are not properly approved, whether F.D.L.E. agency inspection permits are properly approved, improper approval and registration of breath test machines. Noncompliance with F.D.L.E. Rules 11D-8.003, 11D-8.0035, 11D-8.004, 11D-8.006 and 11D-8.007.
Jennifer Keegan: Testify as to the type of operator’s manual, maintenance manuals and schematics in the possession of the F.D.L.E. and used for the approval of breath testing machines, pursuant to all past and present versions of F.D.L.E. Rule 11D-8.003.
Utilizing this testimony, Klinker sought to demonstrate that his breath test results recorded on June 18, 2010 were invalid and unreliable because they were obtained through the use of a breath testing machine that had not been properly approved pursuant to FDLE Rule 11D-8.003, Florida Administrative Code. The hearing officer denied each of Klinker’s written subpoena requests by writing the word “Denied” and “F.S. 322.2615” across the the top of each request.
On July 28, 2010, Klinker’s formal administrative review hearing was conducted. At the hearing, the DHSMV admitted into evidence Klinker’s driver’s license, Trooper Ramirez’ arrest affidavit, the breath alcohol test affidavit prepared by Orange County Sheriffs Office employee Jimmy Burke, the Agency Inspection Report for the utilized Intoxilyzer 8000 machine (FDLE/ATP Form 40) prepared by Orange County Sheriffs Office employee Kelly Melville, and an uncertified transcript of Klinker’s driving record. In addition, the following three individuals provided live testimony at the hearing: Burke, Melville, and Trooper Ramirez. Klinker was present and represented by his attorney, Stuart Hyman. On August 6, 2010, the hearing officer entered a written order sustaining Klinker’s license suspension.
Klinker next sought to challenge the hearing officer’s decision to sustain his driver’s license suspension by filing a first-tier petition for writ of certiorari in the Orange County circuit court. See *838 § 322.2615(13), Fla. Stat. (2010). In that proceeding, Klinker challenged, on procedural due process grounds, the hearing officer’s refusal to issue the subpoenas for FDLE employees Skipper, Keegan, and Barfield. In addition, Klinker contended that his license suspension should have been set aside by the hearing officer because his breath test results were generated by an Intoxilyzer 8000 machine that had not been properly approved for evidentiary use in the State of Florida by the FDLE. Klinker also challenged the failure of the DHSMV to ensure that the record before the hearing officer contained a copy of the most recent FDLE Department Inspection (FDLE/ATP Form 41) for the Intoxilyzer 8000 used to test him. Finally, Klinker argued that Trooper Ramirez’ traffic stop was not supported by probable cause. The circuit court ultimately issued an opinion, on rehearing, rejecting each of Klinker’s arguments.
Klinker now seeks second-tier certiorari review raising essentially the same issues that were asserted before the circuit court. For the reasons which follow, we deny the instant petition.
The Division of Driver Licenses of the DHSMV is tasked with the responsibility of conducting formal administrative review hearings, when requested by a driver, in order to determine whether the DHSMVs decision to suspend a driver’s license should be sustained, amended, or invalidated. See Fla. Admin. Code Rs. 15A-6.013(1); 15A-6.002(3). The formal review process is initiated when a law enforcement officer, on behalf of the DHSMV, issues an administrative suspension to a driver for driving with an unlawful breath alcohol level. See § 322.2615(l)(a), Fla. Stat. (2010). Once this occurs, the officer is provided five days within which he or she must provide certain documentation to the DHSMV, including “the results of any breath or blood test,” which support the officer’s determination. § 322.2615(2), Fla. Stat. (2010).[1] Historically, the DHSMV will rely heavily upon this documentation in attempting to establish that a driver’s license suspension should be sustained.
At a formal review hearing, the proceedings are presided over by a hearing officer who is a division employee and who is tasked with the responsibility of determining “whether the suspension ... is supported by a preponderance of the evidence.” Fla. Admin. Code R. 15A-6.013(7). See also Fla. Admin. Code R. 15A-6.002(2).[2]
*839 Because Klinker submitted breath test samples on the Intoxilyzer 8000 machine in the instant ease, the scope of the hearing officer’s review was limited to the following questions:
1. Whether the law enforcement officer had probable cause to believe that the person whose license was suspended was driving or in actual physical control of a motor vehicle in the state while under the influence of alcoholic beverages or chemical or controlled substances, and;
2. Whether the person whose license was suspended had an unlawful ... breath-alcohol level of 0.08 or higher as provided in s. 316.193.
§ 322.2615(7), Fla. Stat. (2010) (Emphasis added).
Notably, the hearing officer is empowered by statute and rule to issue subpoenas to individuals whose attendance is requested by the driver at the formal administrative hearing. However the scope of the hearing officer’s subpoena-issuing power in this regard is strictly limited to “the officers and witnesses identified in documents in subsection (2) ....” § 322.2615(6)(b); Fla. Stat. (2010); Fla. Admin. Code R. 15A-6.012(1).[3] See also § 322.2615(11), Fla. Stat. (2010) (“The formal review hearing may be conducted upon a review of the reports of a law enforcement officer ..., including documents relating to the administration of a breath test.... However, as provided in subsection (6), the driver may subpoena the officer or any person who administered or analyzed a breath ... test.”).
As noted above, in the present case the record demonstrates that the only documents submitted by Trooper Ramirez to the DHSMV pursuant to his section 322.2615(2) responsibilities were Klinker’s driver’s license, Trooper Ramirez’ arrest affidavit, the breath alcohol test affidavit prepared by Orange County Sheriffs Office employee Jimmy Burke, the Agency Inspection Report for the utilized Intoxi-lyzer 8000 machine (FDLE/ATP Form 40) prepared by Orange County Sheriffs Office employee Kelly Melville, and an un-certified transcript of Klihker’s driving record. Accordingly, on the face of the record it is clear that the only individuals for whom Klinker would have the right to seek subpoenas would be Burke, Melville, and Trooper Ramirez, as these were the only “officers and witnesses identified in documents in subsection (2).” See § 322.2615(6)(b), Fla. Stat. (2010). In fact, Klinker did seek to subpoena these witnesses and, in each case, the subpoenas were issued and the witnesses appeared.
However, Klinker also seeks to challenge the proceedings below on the ground that the record of his formal administrative review hearing did not include a copy of the most recent FDLE Inspection Report (FDLE/ATP Form 41) for the Intoxi-lyzer 8000 machine used to test him. An FDLE Inspection Report is a yearly inspection of a given Intoxilyzer machine conducted by an FDLE inspector in order to “validate[] the instrument’s approval for evidentiary use.” Fla. Admin. Code R. *840 llD-8.004(2). The specific responsibilities of such an FDLE Inspector include “register[ing] evidentiary breath test instruments, ... conducting] inspections and maintenance of breath test instruments and related equipment and facilities, [and] to conduct and monitor training classes, and to otherwise ensure compliance with Chapter 11D-8, F.A.C.” Fla. Admin. Code R. llD-8.004(4). This Court takes judicial notice of the fact that historically, these FDLE inspections in Orange County have been conducted by Roger Skipper and that Mr. Skipper has affixed his signature to numerous FDLE Inspection Reports (FDLE/ATP Form 41) as the certifying official.
Thus, a key question presented in the instant case is whether an FDLE Inspection Report would qualify as a document that law enforcement must submit to the DHSMV pursuant to section 322.2615(2). If it is determined to be such a document, then it would necessarily follow that Klinker would have a statutory right to subpoena the author of that document (presumably Roger Skipper) pursuant to the express language of section 322.2615(6)(b).
We conclude, however, that an FDLE Inspection Report (FDLE/ATP Form 41) is not a document which is contemplated in the language of section 322.2615(2).[4] First, a review of the language of section 322.2615(2) reveals that an FDLE Department Inspection Report could only qualify under the language of that section if it was determined to constitute “the results of any breath or blood test or an affidavit stating that a breath, blood, or urine test was requested by a law enforcement officer or correctional officer and that the person refused to submit.” (Emphasis added). In our view, when read in its totality, this language in subsection (2) clearly refers to documentation, such as the breath alcohol test affidavit, which is designed to provide the “results” of a driver’s breath alcohol level as determined on the date that the driver actually took the breath alcohol test.
Furthermore, as has previously been discussed, an FDLE Department Inspection Report is designed to “validate! ] the instrument’s approval for evidentiary use.” Fla. Admin. Code R. 11D-8.004(2). In achieving this goal, an FDLE inspector performs an annual inspection and maintenance of each Intoxilyzer 8000 machine in the State of Florida in order to determine that each machine is functioning properly. See Fla. Admin. Code R. llD-8.004(4).
Given this purpose of an FDLE Inspection Report, it is our view that such a report is more akin to a report related to the maintenance of a breath testing instrument, as opposed to the results of a breath testing instrument. While it is true that a report related to “the maintenance of a breath testing instrument” is a document that the Florida Administrative Code expressly states that a hearing officer “may” consider, see Fla. Admin. Code R. 15A-6.013(2)[5], we find that such mainte *841 nance reports do not fall within the language of section 322.2615(2), such that a law enforcement officer must provide it to the DHSMV within five days of the issuance of a notice of suspension. Moreover, since we conclude that FDLE Inspection Reports do not fall within the purview of section 322.2615(2), it follows that a driver has no right to request that a subpoena be issued for any individuals identified in such a report. See § 322.2615(6)(b), Fla. Stat. (2010). Thus, in the context of the instant case, we find that the hearing officer correctly refused to issue a subpoena for FDLE employee, Roger Skipper.[6]
Finally, we reject Klinker’s arguments contending that his breath test results were invalid and unreliable due to his claim that they were obtained through the use of an Intoxilyzer machine that had not been properly approved by the FDLE pursuant to Rule 11D-8.003, Florida Administrative Code. We conclude that such challenges to the approval process of the Intoxilyzer machine are simply beyond the scope of a formal driver’s license review proceeding. We are buttressed in this conclusion by the restrictive statutory language located in sections 322.2615(2) and 322.2615(6)(b), which require law enforcement officers to produce to the DHSMV documentation related only to the “results” of the actual breath test at issue, and which limits a hearing officer’s subpoena powers to only the individuals identified in the documents provided pursuant to section 322.2615(2). Furthermore, we are compelled to this result by the recent amendments to the language of Florida Administrative Code Rule 15A-6.013(2), which now give the hearing officer the discretion to consider certain pieces of documentation, such as reports related to the maintenance of a breath testing instrument, where once such consideration was required.[7]
PETITION DENIED.
SAWAYA, JACOBUS and BERGER, JJ., concur.

. The pertinent language of section 322.2615(2), Florida Statutes (2010) is as follows:
[T]he law enforcement officer shall forward to the department, within 5 days after issuing the notice of suspension, the driver’s license; an affidavit stating the officer’s grounds for belief that the person was driving or in actual physical control of a motor vehicle while under the influence of alcoholic beverages or chemical or controlled substances; the results of any breath or blood test or an affidavit stating that a breath, blood, or urine test was requested by a law enforcement officer or correctional officer and that the person refused to submit; the officer's description of the person’s field sobriety test, if any; and the notice of suspension. The failure of the officer to submit materials within the 5-day period specified in this subsection and in subsection (1) does not affect the department's ability to consider any evidence submitted at or prior to the hearing. The officer may also submit a copy of the crash report and a copy of a videotape of the field sobriety test or the attempt to administer such test. Materials submitted to the department by a law enforcement agency or correctional agency shall be considered self-authenticating and shall be in the record for consideration by the hearing officer. Notwithstanding s. 316.066(5), the crash report shall be considered by the hearing officer.

. This Court has previously recognized that the utilization of hearing officers who are employed by the DHSMV does not alter the *839 fact that the formal review procedure "is ‘prompt,’ ‘fair’ and ‘meaningful’ enough to meet the requirements of due process and is facially valid.” Dep’t of Hwy. Safety & Motor Vehicles v. Stewart, 625 So.2d 123, 124 (Fla. 5th DCA 1993).

. While these rules only provide a driver the right to obtain subpoenas for those individuals identified in the documents listed in section 322.2615(2), Florida Statutes, it should be noted that the hearing officer is still provided with the discretion to issue subpoenas for other witnesses he or she deems relevant to the proceedings. See Fla. Admin. Code R. 15A-6.012(1) (“The hearing officer may issue a subpoena on his or her own initiative without the request of the driver.”).

. Like our sister Court in Yankey v. Department of H'wy Safety & Motor Vehicles, 6 So.3d 633, 638 (Fla. 2d DCA 2009), we express no view on whether an Agency Inspection Report (FDLE/ATP Form 40) is contemplated in the language of section 322.2615(2). Here, the Agency Inspection Report was entered into evidence by the DHSMV and Klinker was allowed to subpoena the individual who authored that report (Kelly Melville).

. It is significant to note that on March 11, 2007, the language of Rule 15A-6.013(2) was amended in numerous respects. Among the major changes made to Rule 15A-6.013(2) was die replacement of the word "shall” with the word "may”, such that the hearing officer was no longer required to consider the former, lengthier list of enumerated documents listed within this subsection, but instead now had the discretion to consider the remaining *841 documents listed therein. See The Florida Bar v. Trazenfeld, 833 So.2d 734, 738 (Fla.2002) ("The word 'may' when given its ordinary meaning denotes a permissive term rather than the mandatory connotation of the word 'shall' ”.).

. Likewise, we find that the hearing officer correctly rejected the subpoena requests for Laura Barfield, and Jennifer Keegan. There is simply no reason to believe that either of these two individuals appeared on any of the documents submitted by law enforcement to the DHSMV pursuant to section 322.2615(2).

. We would note, parenthetically, that contrary to Klinker’s assertion in the instant petition, the FDLE has approved the Intoxilyzer 8000 model for evidentiary use in the State of Florida. See Fla. Admin. Code R. 11D-8.003(2). In our view, any challenges directed at deficiencies in this approval process are better addressed in a civil or criminal action.